UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CASIE JO REINHARDT,

           Plaintiff,                    Case No. 1:04-CV-105

v.                                              HON. DAVID W. McKEAGUE*

SHERIFF DWAIN DENNIS and
UNDER-SHERIFF DALE MILLER,
individually and in their official capacities;
THE COUNTY OF IONIA; and
BRANDON BALIS, in his individual and
official capacity,

           Defendants;

and

MICHIGAN MUNICIPAL RISK
MANAGEMENT AUTHORITY,
a municipal corporation,

           Intervening Plaintiff,

v.

BRANDON BALIS and
CASIE JO REINHARDT,

           Intervening Defendants.
_____/

**MEMORANDUM OPINION
ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

From May 2000 to May 2001, plaintiff Casie Jo Reinhardt, 18 years old, was sexually

harassed, assaulted and abused by defendant Brandon Balis, an Ionia County Sheriff's Deputy.

---

    * Hon. David W. McKeague, United States Circuit Judge, Sixth Circuit Court of Appeals, sitting by designation.

Plaintiff asserts claims under federal and state law against defendants Balis, Ionia County, Sheriff Dwain Dennis, and Under-Sheriff Dale Miller. Default has been entered against defendant Balis. The remaining defendants now move for summary judgment in their favor on all of plaintiff's claims against them. Having heard oral arguments of counsel and having carefully considered the briefs, supplemental briefs and exhibits submitted by the parties, the Court now concludes, for the reasons that follow, that the motion for summary judgment must be granted in part.

## I. FACTUAL BACKGROUND

Plaintiff Casie Jo Reinhardt became interested in criminal justice as a high school student in Saranac. On learning that the Ionia County Sheriff Department sponsored an educational ride-along program, she began participating in the Summer of 2000, between her junior and senior years. She rode along in patrol cars with several deputies during the first month before having occasion to ride-along with Deputy Brandon Balis. She rode along with Deputy Balis several times over the course of four to six weeks before anything untoward happened. Between July 2000 and February 2001, however, it is undisputed that Balis repeatedly took advantage of this association, both on-duty and off-duty, to sexually harass and abuse plaintiff. Incidents of inappropriate conversation eventually led to unwanted kissing and touching, then oral sex, and then sexual intercourse. Although plaintiff offered little physical resistance, she maintains that she was not a willing participant and repeatedly told Balis "no."

Plaintiff continued to participate in the ride-along program despite her discomfort over Balis's unwanted attentions because she wanted to be involved with the Sheriff Department. She did not report Balis's misconduct to anyone in the department because she was embarrassed and confused and hoped his behavior would change. Plaintiff stopped riding with Balis in February

2001. Her last sexual encounter with Balis occurred in May 2001. In June 2001, she stopped participating in the ride-along program when she finished her senior year of high school.

In October 2002, plaintiff participated in a departmental investigation of Balis. She was concerned that other young women might be victimized by him. She made a written statement disclosing some of the details of Balis's abusive conduct. Balis was suspended and then resigned from the Sheriff Department on October 17, 2002. Plaintiff was one of four complainants in a subsequent criminal prosecution in which Balis was charged with numerous counts of criminal sexual conduct. He entered into a plea agreement and was sentenced to a year in jail.

In this action, plaintiff's complaint contains two counts. In count I, she asserts a claim under 42 U.S.C. § 1983, alleging that defendants Balis, Ionia County, Sheriff Dennis and Undersheriff Miller, acting under color of state law, deprived her of her constitutional right to bodily and personal integrity. In count II, plaintiff asserts a state law claim, alleging that defendants subjected her to discrimination and harassment based on her sex, in violation of Michigan's Elliott-Larsen Civil Rights Act, M.C.L. § 37.2302(a). Under each count, the liability of the County, Sheriff Dennis and Undersheriff Miller is premised either on the "special relationship" existing between plaintiff and the defendants or their alleged knowledge of Balis's misconduct and failure to take appropriate preventive or remedial action. Defendants contend there is no genuine issue of material fact and that they are entitled to judgment as a matter of law.

## II.  ANALYSIS

### A.  Summary Judgment Standard

Defendants' motion for summary judgment requires the Court to look beyond the pleadings and evaluate the facts to determine whether there is a genuine issue of material fact that warrants a

trial. Fed. R. Civ. P. 56(c). *See generally, Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). That is, the Court must determine "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, (1986). The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party identifies elements of a claim or defense which it believes are not supported by evidence, the nonmovant must present affirmative evidence tending to show a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson*, 477 U.S. at 248. Production of a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Id.* at 252. The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586.

The substantive law identifies which facts are "material." Facts are "material" only if establishment thereof might affect the outcome of the lawsuit under governing substantive law. *Anderson*, 477 U.S. at 248. A complete failure of proof concerning an essential element necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23.

### B.  Count I - § 1983 Federal Civil Rights Claim

Defendants do not challenge plaintiff's contention that Balis's mistreatment of her resulted in a violation, under color of state law, of her constitutional right to personal security and bodily integrity, actionable under 42 U.S.C. § 1983. *See Doe v. Claiborne County, Tenn.*, 103 F.3d 495,

506 (1996). However, Ionia County, Sheriff Dennis and Undersheriff Miller cannot be held vicariously liable under § 1983 for injuries caused by Balis. *Id*. at 507, 511. The individual defendants, as Balis's supervisors, can be liable in their individual capacities only if they actually participated in, condoned, encouraged or knowingly acquiesced in the alleged misconduct. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). There being no evidence that Sheriff Dennis or Undersheriff Miller even knew about Balis's mistreatment of plaintiff, it is clear that they are entitled to summary judgment on plaintiff's claims against them in their individual capacities.

To establish liability on the part of the County and the individual defendants in their official capacities, plaintiff must establish the existence of a "special relationship" giving rise to a duty of protection or that her rights were violated because of an official policy or custom. *Doe*, 103 F.3d at 506, 509-10. Plaintiff relies on both theories.

1. *Special Relationship*

Plaintiff contends first that the County is liable based on the existence of a "special relationship." By sponsoring the ride-along program and permitting her, a high school student, to ride in a patrol vehicle under the total authority and control of a sheriff deputy, plaintiff contends the County created a special risk of harm, giving rise to a special relationship and duty of protection. Plaintiff relies on *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 200-01 (1989), where the Supreme Court recognized that a governmental entity that has deprived an individual of his liberty by taking him into custody, or that has otherwise created a risk of harm to the individual or made him more vulnerable to danger, may have a duty to protect. Plaintiff acknowledges that she was not "in custody," but contends that the County's allowing her to participate in the ride-along program made her more vulnerable to danger.

To prevail on such a theory, plaintiff must establish (1) an affirmative act by the County that either created or increased the risk that she would be exposed to private acts of violence; (2) that action by the County exposed her to a special danger, as distinguished from a risk that affects the public at large; and (3) the "requisite culpability" in the County. *Schroder v. City of Fort Thomas*, 412 F.3d 724, 728 (6th Cir. 2005). The "requisite culpability" factor has been construed as requiring a showing of "deliberate indifference." *Id.*; *Sperle v. Michigan Dep't of Corrections*, 297 F.3d 483, 493-94 (6th Cir. 2002).

Assuming, on the present record, that plaintiff has created a genuine issue of material fact on each of the first two elements of this theory, it is nevertheless clear, for the reasons set forth below, that the evidence does not support a reasonable finding of deliberate indifference. This failure of proof concerning an essential element of the theory renders other fact issues immaterial. The County is therefore entitled to summary judgment in its favor on plaintiff's "special relationship" theory of relief.

### 2. *Policy of Inaction*

In the second theory under which defendants are said to be liable under § 1983, plaintiff alleges her injuries were the result of a County policy or custom. Plaintiff contends there was an unwritten policy or custom in the Sheriff Department condoning or tolerating sexually abusive conduct by department employees generally, and Deputy Balis in particular.

To prevail on such an "inaction theory," where a policy of tolerating federal rights violations is allegedly unwritten but entrenched, plaintiff must show: (1) the existence of a clear and persistent pattern of illegal activity; (2) notice or constructive notice on the part of the defendants; (3) defendants' tacit approval of the unconstitutional conduct, such that their deliberate indifference in

failing to act can be said to amount to an official policy of inaction; and (4) that defendants' custom was the "moving force" or direct causal link in the constitutional deprivation. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005); *Doe v. Claiborne County*, 103 F.3d at 508. The evidence must show that the need to act was so obvious that defendants' conscious decision not to act can be said to amount to a "policy" of deliberate indifference to plaintiff's constitutional rights. *Id*. "'Deliberate indifference' in this context does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference to sexual abuse." *Id*.

   a. *Pattern of Illegal Activity*

In furtherance of demonstrating a persistent pattern of illegal activity, plaintiff points first to evidence that "sex talk" was commonplace among Sheriff Department employees; that some employees were known to be openly involved in extramarital affairs; and that some employees were rumored to have engaged in sexual activity while on duty. No, this evidence does not suggest illegal activity, but plaintiff contends it helps explain why evidence of Balis's inappropriate behavior was not taken more seriously. Plaintiff contends Balis's sexually abusive attitudes and behaviors were manifest from the outset, but went unchecked because of permissiveness in the Sheriff Department.

Balis was hired by the Ionia County Sheriff Department as a deputy on May 24, 1999. In December 1999, he was the subject of an investigation concerning several incidents of misconduct. Three of the incidents involved what might arguably be characterized as playful, albeit inappropriate, banter between Balis and other department employees, Sergeant David Greene, Deputy Dianna Hopkins and Deputy Tracy Greenwood. In all three cases, Balis's colleagues appeared to be willing participants in the bantering, to a point. However, Balis's participation in each exchange eventually became obnoxious, even alarming and potentially threatening (*e.g.*, alluding to oral sex with the

female deputies, requesting a photograph of Sgt. Greene having sex with his girlfriend). The fourth incident involved a rumor that Balis had voided a traffic ticket in exchange for sex with the female motorist.

Then-Lieutenant Dale Miller conducted the investigation. After making inquiry of several deputies, he found the rumor regarding the voided ticket to be unsubstantiated. The allegations of inappropriate communications with Deputies Hopkins and Greenwood, however, were sustained. In a letter of reprimand dated December 6, 1999, Balis was deemed to have engaged in "the use of illegal and forbidden harassment that could reasonably be construed or perceived by a member of the Department as hostile, offensive or intimidating." He was suspended for one day without pay.

After this disciplinary action was taken, the record is devoid of evidence – apart from plaintiff's testimony about her unreported sexual contacts with Balis – of sexually abusive conduct by Balis until June 2001, *after* the time of Balis's mistreatment of plaintiff. During the interim, Balis's supervisor, Lieutenant Robert Schutt, who was personally acquainted with both female interns, Casie Jo Reinhardt and Kelly Miller, had, as a precautionary measure, interviewed them regarding their ride-along experience with Deputy Balis. Both denied that anything inappropriate had occurred. In the Spring of 2001, Balis was rumored to have been flirting on duty with teen-aged girls in the Saranac area. Although these rumors did not hint of illegal activity, they appear to have been taken seriously by Lt. Schutt, who thereafter prohibited Balis from taking female ride-along passengers with him on patrol.[1]

---

[1] In the Summer of 2001, after the period of time implicated by plaintiff's present complaint, the Sheriff Department received several citizen complaints about Balis. One concerned his flirting behavior with young women at a Saranac area gas station. Another concerned Balis's conduct of a pat-down search of a young female motorist. As a result of these complaints, Balis was reassigned from the Saranac area to the Lyons-Muir-Pewamo area of the county. He was also assigned to a

Yet, in any event, the materially uncontroverted evidence of Balis's mistreatment of plaintiff during the period July 2000 to May 2001 is sufficient to satisfy the "persistent pattern of illegal activity" element of plaintiff's claim.

b. *Notice*

Plaintiff does not contend that defendants had actual or constructive notice of Balis's mistreatment of her from July 2000 to May 2001, or notice of similar abuse of any other ride-along passenger. Plaintiff admits that she told no one at the Sheriff Department about Balis's misconduct until October 2002. Yet, she contends defendants' actual notice of inappropriate communications between Balis and other co-employees in 1999, coupled with their notice of rumors of his inappropriate communications with young women while on road patrol, put them on notice of the need to supervise Balis more closely and investigate the rumors more thoroughly.

This evidence is simply insufficient to satisfy the "notice" element of plaintiff's deliberate indifference claim. This element requires awareness by the defendants of prior unconstitutional actions by department employees. *Miller v. Calhoun County*, 408 F.3d 803, 815 (6th Cir. 2005). Defendants must be shown both to have been aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and to have actually drawn the inference. *Sperle*, 297 F.3d at 493. At the least, the risk of harm must be shown to have been so obvious that the defendants had to have known of it. *Bukowski v. City of Akron*, 326 F.3d 702, 710 (6th Cir. 2003).

---

patrol car with a video camera and was required to video-record all traffic stops.
   While plaintiff would rely on these matters, as well as numerous other incidents extending into 2002, to establish the persistent pattern of Balis's abusive conduct, because these events occurred after Balis's mistreatment of plaintiff, they are not relevant to her claim that defendants' earlier deliberate indifference caused the violation of her rights.

Here, plaintiff has failed to adduce evidence of knowledge by defendants of prior constitutional violations by Balis or any other Sheriff Department employees. Evidence of Balis's prior inappropriate communications of a sexual nature simply cannot be deemed to have placed defendants on notice that plaintiff was at obvious risk of serious harm when she rode-along with Balis. The quantum of "notice" evidence presented in this case is substantially less than that found to be insufficient in *Sperle*, 297 F.3d at 492-94, and *Doe*, 103 F.3d at 508-09. Hence, the Court concludes that plaintiff has failed to establish the existence of a genuine issue of material fact concerning the notice element.

    c. *Deliberate Indifference*

Nor has plaintiff established that defendants' deliberate indifference amounted to a "policy of inaction." Inasmuch as the record fails to demonstrate the existence of defendants' knowledge of a persistent pattern of illegal activity or constitutional violations, their failure to respond can hardly be deemed to constitute the sort of acquiescence or tacit approval necessary to satisfy the third element of plaintiff's claim. To the contrary, the record demonstrates that when defendants became aware of Balis's inappropriate conversations with co-employees and members of the public, they did not ignore them or fail to act. Rather, investigations were undertaken and disciplinary and corrective actions were taken. Viewing the evidence with hindsight, it is clear that more could have been done to safeguard vulnerable ride-along passengers from Balis's predation. However, a "showing of simple or even heightened negligence" is insufficient to make out a deliberate indifference claim. *Thomas*, 398 F.3d at 433 (quoting *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407 (1997)).

Defendants' culpability can only be assessed in light of what they knew at the time. During the period when plaintiff was abused by Balis, defendants are not shown to have been on notice that Balis posed an excessive risk to plaintiff's health and safety. Their failure to prevent harm to plaintiff cannot therefore by deemed to have been a function of a policy of inaction in the face of repeated constitutional violations. To hold defendants liable under these circumstances would be to impermissibly collapse the municipal or supervisory liability standard into a simple *respondeat superior* standard. *See id.* at 432-34.

      d.  *Moving Force*

Finally, because the record fails to create a genuine factual dispute regarding defendants' notice of prior constitutional violations and their adoption of a custom or policy of inaction in response, such a custom or policy can hardly be deemed to have been the moving force behind plaintiff's injuries. The record simply fails to support a finding that defendants were deliberately indifferent and that there was a direct causal link between their deliberate indifference and the deprivation of plaintiff's rights.

Plaintiff having thus failed to present evidence satisfying the essential elements of her claim, it follows that defendants are entitled to judgment as a matter of law. "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Miller*, 408 F.3d at 815 (quoting *Bd. of County Comm'rs*, 520 U.S. at 410). Plaintiff has not met this stringent standard in this case.

      **3.  *Failure to Train***

In a related theory of relief under her count I § 1983 claim, plaintiff maintains that her injuries would have been prevented if the Sheriff Department had adopted adequate procedures and provided

11

adequate training for recognizing, investigating and addressing sexual abuse by its deputies. Yet again, plaintiff can establish defendants' liability under this theory only if the failure to train employees in a relevant respect evidences deliberate indifference to constitutional rights. *Miller*, 408 F.3d at 816. "Mere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient to prove liability." *Id.* Plaintiff must establish not only that procedures and training were objectively inadequate, but also that their inadequacy was so obvious, due to a history of widespread abuse, that defendants' failure to improve them can be said to represent their tacit approval of the inadequacy and resultant abuse. *Id*. at 816-17.

For the reasons set forth above, it is apparent on the present record, that plaintiff cannot prevail on this theory either. At the time of plaintiff's injuries, there was no history of widespread sexual abuse by sheriff deputies signaling the inadequacy of department procedures and training. Further, when supervisory personnel were made aware of cause for concern about Balis, investigations were conducted and corrective actions taken. Defendants' response to the initial signs of Balis's misconduct turned out not to be effective to deter subsequent abusive behavior, but they did not ignore the early signs and did not fail to take any action.

Plaintiff relies on expert testimony to identify shortcomings in department procedures and training, but the expert's opinion that these shortcomings reflect a pattern or practice of neglect is insufficient to create a genuine issue of material fact. First, as plaintiff acknowledges, an expert's opinion on an ultimate legal conclusion is outside the scope of admissible expert testimony. *See Berry v. City of Detroit*, 25 F.3d 1342, 1353-54 (6th Cir. 1994). Second, the expert's opinion is couched in terms of simple negligence, not deliberate indifference. Third, even if the expert's opinion were accepted as identifying inadequacy in department procedures and training, the record is devoid

of evidence that the inadequacy was or should have been obvious. Fourth, there is no evidence, as opposed to speculation, demonstrating a causal link between any such inadequacy and plaintiff's injuries.

In conclusion, plaintiff's failure to train theory, like her special relationship and policy of inaction theories, fails as a matter of law for lack of evidence that defendants Ionia County, Sheriff Dennis and Undersheriff Miller were deliberately indifferent. The moving defendants are therefore entitled to summary judgment on plaintiff's § 1983 claim.

What happened to plaintiff Casie Jo Reinhardt, a student interested in pursuing a career in law enforcement, who presumably viewed Deputy Balis as a model, is a travesty and a tragedy. However, the factual record discloses that none of the moving defendants had the "requisite culpability" under the law, to justify holding them liable for defendant Balis's violation of plaintiff's federally protected civil rights.

### C. Count II - Sex Discrimination Claim

Michigan's Elliott-Larsen Civil Rights Act prohibits sex discrimination in the provision of public services. M.C.L. § 37.2302(a). In count II of her first amended complaint, plaintiff alleges she was subjected to sex discrimination (disparate treatment, hostile environment and sexual harassment) in the provision of police services. The Court has exercised supplemental jurisdiction over this state law claim under 28 U.S.C. § 1367. Inasmuch as default has entered against defendant Balis and defendants Ionia County, Sheriff Dennis, and Undersheriff Miller are entitled to summary judgment on plaintiff's claims against them under federal law, the Court will exercise its discretion to dismiss plaintiff's state law cause of action against the three latter defendants. *See* 28 U.S.C. § 1367(c)(3); *Weeks v. Portage County Executive Offices*, 235 F.3d 275, 279-80 (6th Cir. 2000)

(recognizing propriety of dismissal of state law claims after pre-trial dismissal of federal claims). Because the contours of such a sex discrimination claim under the Elliott-Larsen Civil Rights Act are presently evolving in the Michigan case law, *see Diamond v. Witherspoon*, 265 Mich. App. 673 (2005), the claim is more appropriately addressed in the state courts. *See Valencia ex. rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003) (observing that principles of federalism and comity counsel in favor of allowing state courts to adjudicate unsettled matters of state law).

### III. CONCLUSION

Based on the foregoing analysis, the motion of defendants Ionia County, Sheriff Dennis and Undersheriff Miller for summary judgment on plaintiff's count I federal civil rights claim against them will be granted**.** The count II state law sex discrimination claim against these three defendants will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). Outstanding only are the claims against defendant Balis, against whom default has entered. A partial judgment order consistent with this opinion shall issue forthwith.


Dated: August 31, 2005              /s/   David W. McKeague
                                    HON. DAVID W. McKEAGUE
                                    UNITED STATES CIRCUIT JUDGE